**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| JESSICA SHELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:04-CV-1817 CAS |
| | ) | |
| GLENN O. EBKER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendants Glenn O. Ebker and Gasconade County's motion for summary judgment. Plaintiff opposes the motion with respect to her claims against defendant Ebker in Counts I through IV of the complaint but concedes other aspects of the motion. For the following reasons, the Court will grant defendants' motion for summary judgment as to Gasconade County, and grant it in part and deny it in part as to defendant Ebker.

**Background**.

This is an action under 42 U.S.C. § 1983 and state law, which alleges that plaintiff Jessica Shell's constitutional rights were violated in connection with a sheriff's investigation into her report that guns had been stolen from her parents' home. Defendant Ebker was formerly the Sheriff of Gasconade County, Missouri. Plaintiff asserts claims against Ebker and Gasconade County for illegal search and seizure, excessive force and unlawful arrest under section 1983 in Count I, false imprisonment under section 1983 in Count II, battery under state law in Count III, false imprisonment under state law in Count IV, and failure to train under section 1983 in Count V.[1] Ebker is sued both

---

[1] In the complaint, Count V is mislabeled as Count VI. For purposes of this opinion, the Court will refer to the failure-to-train count as Count V.

in his individual and official capacities. Plaintiff asserts that Ebker's alleged violations of her constitutional rights occurred as a result of official policy and custom of Gasconade County (the "County").

**Legal Standard**.

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in her pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000); Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir.), cert. denied, 528 U.S. 1063 (1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." <u>Herring</u>, 207 F.3d at 1029 (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact. <u>See</u> <u>Crossley v. Georgia-Pacific Corp.</u>, 355 F.3d 1112, 1114 (8th Cir. 2004).

With this standard in mind, the Court accepts the following facts as true for purposes of resolving this motion for summary judgment.

**Facts**.[2]

On December 16, 2002, plaintiff, who was seventeen years old, looked under her bed for a gun she had stored for her fiancee, Phil.[3] When plaintiff did not see the gun and could not find it, she called her parents and brother to ask if they had taken it, but all denied knowing where the gun was.

---

[2]The defendants assert that although plaintiff set forth in her opposition memorandum seventeen facts which she claims present a genuine issue for trial, she did not deny any of the twenty-one material facts as to which defendants contend there is no genuine issue. Defendants state that under Local Rule 4.01(E), all properly supported facts offered by the moving party are deemed admitted where the non-moving party does not specifically controvert them. While this is true, not all of defendants' statements of material fact were accompanied by supporting materials, and therefore the Court does not deem those "facts" admitted. For example, paragraphs 5, 6 and 7 of defendants' statement of material facts refer to pages 32 and 33 of plaintiff's deposition, which were not provided to the Court. Defendants did not electronically file any portion of plaintiff's deposition with the Court. The paper courtesy copy of the motion for summary judgment that defendants provided included pages 14-21 of plaintiff's deposition, and plaintiff submitted other pages of her deposition with her opposition materials, although not pages 32 and 33. The Court also notes that defendants did not controvert plaintiff's statements of material fact by means of citation to the record. Rather, they merely asserted that the facts were previously controverted in the defendants' Answers and were immaterial because they related only to the battery claim. This is insufficient to raise an issue of material fact as to plaintiff's statement of facts.

The Court does not make findings of fact relevant to plaintiff's claims against Gasconade County, as plaintiff's concession that she has no evidence to support those claims makes such findings unnecessary.

[3]The record on summary judgment is not entirely clear, but it appears to the Court that the person named "Phil" discussed in plaintiff's deposition is Phil Shell. Plaintiff testified that Phil was her fiancee in December 2002, and that she married a Phil Shell in June 2003.

Shell Dep. at 14:23-25; 16:2-11. In fact, plaintiff's mother had found the gun and called plaintiff's father at work and told him about it. Plaintiff's father contacted his friend Terry VanBuskerk and they decided to "check with the sheriff's department about the gun." Lottman Dep. at 19:9-14. Plaintiff's father and VanBuskerk got the gun and turned it over to the sheriff's department. Id. at 19:14-16.[4]

Plaintiff knew that her parents had taken the gun "because there is no other reason for Phil's gun to be missing" so she took her parents' guns out of the gun safe in their home and took them to unoccupied property behind Phil's house where she left them. Shell Dep. at 16:13-17:9. Plaintiff then called her mother and told her that the guns were missing or had been stolen from their house. Plaintiff's mother told her to get out of the house, so plaintiff went to her grandmother's house. Plaintiff's father, defendant Ebker and VanBuskerk went to the grandmother's house to pick up plaintiff. They took plaintiff back to the family home and began asking questions about what had happened. A deputy sheriff, Jacob Walk, was also present at plaintiff's house. Plaintiff told the men, including defendant Ebker, that someone had broken into the house and stolen the guns.

Defendant Ebker asked plaintiff's father, VanBuskerk and Deputy Walk to leave him alone with plaintiff so he could conduct a "voice stress test analysis" on her, and that it would work better if they were alone. The other men complied and went outside of the house while plaintiff and Ebker remained in the kitchen. Ebker had a hand-held cassette tape recorder with him which he turned on. Ebker did not advise plaintiff of her Miranda rights, and plaintiff did not feel that she was free to leave. After asking plaintiff a few routine questions concerning her age and address, Ebker asked her

---

[4]When plaintiff's father gave the gun to Ebker, Ebker said he thought the gun might had been used in a shooting of a neighbor of Phil Shell's and wanted to see if it could be tested and linked to the shooting and to Phil Shell. Id. at 21:1-7. Ebker "handle[d] the gun all over," however, and opened and closed it and put his own fingerprints on it. Id. at 21:7-15.

4

questions concerning where the guns were and whether she knew who might have taken the guns. Plaintiff told him that she did not know who took the guns or where they were. Finally, Ebker yelled, "Where is the God damn guns? Where is the God damn guns?" Plaintiff believes the tape recorder was still on for these questions, but then Ebker turned it off.[5] The interview had lasted approximately ten minutes. Shell Dep. at 35:5-6.

Plaintiff believed the test was over and was getting up from the table when Ebker placed his left hand on her right shoulder. Ebker told her that he had set Phil up with marijuana and wanted her to say that Phil had taken the guns so Ebker could send him to prison for sure. Plaintiff refused to say that Phil had taken the guns and then Ebker called her a "fucking whore," shoved her up against the kitchen counter and hit her in the ribs two or three times. Plaintiff grunted when Ebker struck her, but did not say anything because she was afraid of him. Ebker said, "You are going to regret it, bitch. Don't think about telling anybody. Your word against mine. No one is going to believe a 17 year old versus a sheriff." Shell Dep. at 19:22-21:10. Plaintiff was in the kitchen with Ebker approximately three to four minutes during this period while the tape recorder was off and he cursed at her and struck her.

Plaintiff was afraid to tell anyone about Ebker's conduct because she feared she would not be believed. Plaintiff suffered bruising as a result of being hit in the ribs by Ebker, had a red spot on her right shoulder where Ebker held her, and a bruise in the middle of her back as a result of him pushing her into the kitchen counter. Plaintiff suffered pain for approximately two months after Ebker hit her, but did not seek any medical treatment. Approximately one week after the incident,

---

[5]There is no tape recording or transcript of a tape recording in the summary judgment record.

plaintiff told her fiancee Phil what had happened, and he took photographs of her bruised left side.[6] Plaintiff did not tell her parents about the incident until approximately a year later.  Plaintiff filed this action on December 29, 2004.

**Discussion**.

As a threshold matter, plaintiff concedes in her opposition to defendants' motion for summary judgment that she has no evidence to support any of her claims against defendant Gasconade County in Counts I through V of the complaint.  Pl.'s Sugg. Opp. to Defs.' Mot. for Summ. J. at 4.  Plaintiff also concedes that there is no evidence to support her claim of failure to train in Count V against defendant Ebker.  Id..  The Court will therefore enter judgment in favor of defendant Gasconade County on all counts and in favor of defendant Ebker on Count V.

Ebker moves for summary judgment on Counts I, II and IV of the complaint.  Ebker concedes that fact issues exist which preclude the entry of summary judgment on Count III, the state law battery claim.

**A.  Counts I and II -- Official Capacity Claims**.

Defendant Ebker moves for summary judgment on plaintiff's claims under section 1983 in Counts I and II to the extent they are asserted against him in his official capacity.  Plaintiff does not specifically respond to this aspect of Ebker's motion for summary judgment.

A claim against a public official in his or her official capacity is merely another way of pleading an action directly against the public entity itself.  Hafer v. Melo, 502 U.S. 21, 25 (1991).  Thus, suits against public officials in their official capacity should be treated as suits against the public entity.  Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999) (citing Kentucky v.

---

[6]There are no photographs in the summary judgment record.

Graham, 473 U.S. 159, 166 (1985)).  A section 1983 action against a county sheriff in his official capacity is treated as a suit against the county.  Liebe v. Norton, 157 F.3d 574, 578 (8th Cir. 1998).  In a section 1983 action, a county may only be held liable for constitutional deprivations of the deprivations are a result of a policy or custom of the county.  Id. at 578-79.

Thus, the section 1983 claims against defendant Ebker in his official capacity must be treated as claims against the County.  Plaintiff has already conceded that she does not have evidence to support claims against the County based on policy or custom.  Defendant Ebker is therefore entitled to summary judgment on plaintiff's section 1983 claims against him in Counts I and II in his official capacity.

**B.  Count I - Individual Capacity Claims**.

Defendant Ebker moves for summary judgment on plaintiff's claims against him under section 1983 in Count I (unlawful seizure, search and false arrest) and Count II (false imprisonment) and under state law for false imprisonment, asserting that he is entitled to qualified and official immunity on these claims.  Apart from citing basic case law concerning the nature of qualified and official immunity, defendant does not cite any instructive case law or even discuss plaintiff's claims separately.  Rather, defendant merely asserts that he was performing a discretionary act by questioning plaintiff concerning her report of the stolen guns, and that even though plaintiff alleges he physically and verbally assaulted her, his actions did not violate any clearly established statutory or constitutional right of which a reasonable officer would have known.  Defendant asserts there is no evidence he was deliberately indifferent or acted plainly incompetently or in knowing violation of the law with regard to plaintiff's claims of illegal search, unlawful arrest, or false imprisonment.

Finally, defendant contends that plaintiff's allegations concerning the use of force are relevant only to her state law battery claim.

As a threshold matter, the Court observes that defendants' perfunctory approach to summary judgment has greatly complicated the Court's task in resolving the instant motion. Plaintiff's federal and state law claims require entirely separate analysis. For example, the state law doctrine of official immunity is irrelevant to and cannot be a defense to plaintiff's federal section 1983 claims. With respect to the qualified immunity defense applicable to section 1983 claims, the Court cannot determine whether a defendant is entitled to qualified immunity without carefully examining the facts of the case and the law which has developed with respect to each of the plaintiff's claims. Blanket assertions of entitlement to qualified immunity are virtually meaningless.

The Eighth Circuit has recently reiterated the appropriate analysis to apply on qualified immunity:

> To determine whether an official is entitled to qualified immunity, we ask two questions: (1) whether, after viewing the facts in the light most favorable to the party asserting the injury, there was a deprivation of a constitutional or statutory right; and, if so, (2) whether the right was clearly established at the time of the deprivation such that a reasonable official would understand his conduct was unlawful in the situation he confronted. See Saucier v. Katz, 533 U.S. 194, 201 (2001); County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998); Wilson v. Lawrence County, Mo., 260 F.3d 946, 951 (8th Cir. 2001) (citing Tlamka v. Serrell, 244 F.3d 628, 632 (8th Cir. 2001)).

Henderson v. Munn, 439 F.3d 497, 501-02 (8th Cir. 2006).

The Court therefore examines each of plaintiff's section 1983 claims separately.

**1. Unreasonable Seizure**.

To establish a violation of the Fourth Amendment in a section 1983 action, the plaintiff must demonstrate that a seizure occurred and that the seizure was unreasonable. McCoy v. City of

<u>Monticello</u>, 342 F.3d 842, 846 (8th Cir. 2003). "A Fourth Amendment seizure occurs when an officer restrains the liberty of an individual through physical force or show of authority." <u>Id.</u> (citing <u>Terry v. Ohio</u>, 392 U.S. 1, 19 n.16 (1968)). "Although seizure requires restraint of an individual's liberty, not every government act resulting in a restraint of an individual's liberty constitutes a seizure." <u>Id.</u> at 846-47 (citing <u>Brower v. County of Inyo</u>, 489 U.S. 593, 596-97 (1989)). "To be a violation of the Fourth Amendment, the restraint in liberty must be effectuated '*through means intentionally applied.*'" <u>Id.</u> (quoting <u>Brower</u>, 489 U.S. at 596-97).

As the <u>Brower</u> decision makes clear, a seizure alone does not establish liability under section 1983. The seizure must be unreasonable. <u>Brower</u>, 489 U.S. at 599. An excessive force claim is analyzed under the Fourth Amendment's "objective reasonableness" standard. <u>McCoy</u>, 342 F.3d at 848 (citing <u>Graham v. Connor</u>, 490 U.S. 386, 395-97 (1989)). "Reasonableness of a seizure if determined by the totality of the circumstances and must be judged from the viewpoint of a reasonable officer on the scene, irrespective of the officer's underlying intent or motivation." <u>Id.</u> (citing <u>Graham</u>, 490 U.S. at 396-97). "The reasonableness of force depends on the facts and circumstances of each case accounting for (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." <u>Id.</u> (quoting <u>Graham</u>, 490 U.S. at 396) (internal punctuation omitted). "Whether an officer's use of force is reasonable is 'judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." <u>Id.</u> (quoting <u>Graham</u>, 490 U.S. at 396). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments–in circumstances that are

tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97.

In this case, Ebker was questioning plaintiff in the kitchen of her parents' home about the alleged theft of her parents' guns. There is no assertion that plaintiff posed any threat to Ebker's safety, or that she was attempting to evade Ebker's questions or leave his presence. Plaintiff alleges that Ebker restrained her movement by grabbing her shoulder, then shoved her back into the kitchen counter, and hit her several times in the side. Accepting these assertions as true, Ebker clearly restrained plaintiff's freedom of movement and seized her.

Viewing the facts in the light most favorable to plaintiff, plaintiff has established a deprivation of her constitutional right to be free from an unreasonable seizure. Under the circumstances alleged, there can be no justification or excuse for the application of any force against plaintiff, and Ebker's conduct violated clear constitutional bounds. "Police use of excessive force is a constitutional violation." McKinney v. DeKalb County, 997 F.2d 1440, 1443 (11th Cir. 1993). "It is clear . . . that police officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever. . . . It is only when the circumstances themselves leave room for the exercise of judgment on the part of the police officer that qualified immunity is appropriate." Clash v. Beatty, 77 F.3d 1045, 1048 (7th Cir. 1996). See Johnston v. City of Bloomington, 170 F.3d 825, 827 (8th Cir. 1999) (per curiam) (affirming denial of qualified immunity to police officers on section 1983 excessive force and false imprisonment claims where officers were alleged to have choked the plaintiff, thrown him down stairs and stepped on his face following an altercation at a motel where plaintiff and his family were evicted for loud behavior); Bartram v. Wolfe, 152 F. Supp.2d 898, 903-04 (S.D. W.Va. 2001) (police officer was not entitled to qualified immunity on suspect's Fourth

Amendment claim if he punched or otherwise battered a handcuffed suspect who was complying and cooperating with his instructions); c.f. Dixon v. Richer, 922 F.2d 1456, 1463 (10th Cir. 1991) (qualified immunity denied on detainee's Fourth Amendment claim; "While it is reasonable to frisk a detainee suspected of carrying a weapon, . . . it is not reasonable to hit him in the stomach with a flashlight, or choke and beat him, solely on the basis of that suspicion); Gray v. Spillman, 925 F.2d 90, 95 n.4 (4th Cir. 1991) (noting that "beating and threatening a person during custodial interrogation seems to violate 'clearly established' constitutional rights) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

As to the second part of the qualified immunity analysis, the constitutional rights asserted by plaintiff--to be free from unreasonable seizures and excessive force--were clearly established on the date of her alleged beating. See Johnston, 170 F.3d at 827 (it was established in 1996 that citizens have the right to be free from unreasonable seizures and excessive force); Guite v. Wright, 147 F.3d 747, 750 (8th Cir. 1998) (Fourth Amendment right to be free from excessive force was clearly established in 1995).

The facts as alleged by plaintiff show the force used was so plainly excessive that, as an objective matter, Ebker would have been on notice that he was violating the Fourth Amendment. Ebker's alleged conduct is not comparable to a split-second decision when an officer is physically threatened. It does not take hindsight to conclude that if Ebker was attempting to beat a confession out of plaintiff or punish her for refusing to tell him what he wanted to hear, then his conduct was not only malicious and sadistic but summarily punitive. "Taking the law into one's own hands is precisely what the legal system attempts to prevent. Any police officer, sworn to uphold the law, must know this basic concept." Sweatt v. Bailey, 876 F. Supp. 1571, 1578 (M.D. Ala. 1995). Therefore, this

case does not fall into the gray area where "[o]fficials are not liable for bad guesses," Davis v. Hall, 375 F.3d 703, 712 (8th Cir. 2004), but rather, alleges facts which would constitute "transgressing bright lines." Id. Under these circumstances, no reasonable officer could have thought that Ebker's alleged actions were lawful.

Accordingly, Ebker's motion for summary judgment based on qualified immunity on plaintiff's Fourth Amendment seizure and excessive force claims in Count I should be denied.[7]

### 2. **Unlawful Arrest Claim**.

The Fourth Amendment right not to be arrested without probable cause is certainly clearly established. Womack v. City of Bellefontaine Neighbors, 193 F.3d 1028, 1030-31 (8th Cir. 1999) (citing Kuehl v. Burtis, 173 F.3d 646, 649 (8th Cir. 1999)). Probable cause exists if at the time of arrest, the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing the person committed the charged crimes. Id. at 1031.

It is not clear to the Court that plaintiff asserts a claim for unlawful arrest in Count I of her complaint. Although the title of Count I includes the term "unlawful arrest," plaintiff does not allege

_____

[7]Plaintiff's claims in Count I include reference to her rights under the Fourteenth Amendment, presumably the Substantive Due Process Clause. As plaintiff recognizes, excessive force claims such as this are analyzed under the Fourth Amendment's "objective reasonableness" standard and not substantive due process principles. See Pl.'s Sugg. in Opp. at 6. In Graham v. Connor, 490 U.S. 386, 395 (1989), the Supreme Court stated, "All claims that law enforcement officers have used excessive force--deadly or not--in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." Thus, a plaintiff may pursue a substantive due process claim only if no "seizure" occurred. See County of Sacramento v. Lewis, 523 U.S. 833, 842-43 (1998); Helseth v. Burch, 258 F.3d 867, 872 n.4 (8th Cir. 2001) (en banc), cert. denied, 534 U.S. 1115 (2002). If a seizure occurred, a plaintiff's excessive force claims must be analyzed under the Fourth Amendment. In this case, the Court has determined that a seizure occurred. Accordingly, plaintiff's Fourteenth Amendment claims in Count I must be dismissed.

in the complaint or in her statement of material facts that she was arrested by Ebker without probable cause, nor does she discuss any arrest claim in her opposition to the motion for summary judgment.[8] The Court recognizes that "[a]n investigatory stop may turn into an arrest if the stop lasts for an unreasonably long time or the officers use unreasonable force in executing the stop." Szabla v. City of Brooklyn Park, Minn., 429 F.3d 1168, 1175 (8th Cir. 2005) (citing United States v. Miller, 974 F.2d 953, 956 (8th Cir. 1992)). Plaintiff has alleged that Ebker used unreasonable force in seizing her.

Because defendant Ebker did not specifically address plaintiff's unlawful arrest claim, the Court will deny Ebker's motion for summary judgment based on qualified immunity with respect to any unlawful arrest claim. As stated above, it is not readily apparent whether plaintiff intends to assert an unlawful arrest claim. Plaintiff shall clearly state in her pretrial compliance materials whether she is asserting an unlawful arrest claim and, if so, the legal and factual basis for such a claim.

### 3. Unlawful Search Claim.

Plaintiff asserts a claim for unlawful search under section 1983 in Count I, which alleges that defendant Ebker subjected "plaintiff's person to search without warrant, probable cause, or justification." Complaint, ¶ 37(d). The complaint also alleges, "The search and seizure suffered by plaintiff occurred during an illegal search and seizure and thus violated plaintiff's civil rights pursuant to 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution." Id., ¶ 38. The complaint does not state any facts beyond the foregoing to support a claim concerning a search, and plaintiff does not include any facts supporting a claim based on an unlawful search in her statement of material facts in opposition to summary judgment.

---

[8]As previously discussed, defendants' motion for summary judgment does not separately discuss plaintiff's various section 1983 claims set forth in Counts I and II.

Because defendant Ebker did not specifically address plaintiff's unlawful search claim in his motion for summary judgment based on qualified immunity, this aspect of the motion will be denied. Nonetheless, it is not readily apparent to the Court that plaintiff intends to assert an unlawful search claim at trial. Plaintiff shall clearly state in her pretrial compliance materials whether she is asserting an unlawful search claim and, if so, the legal and factual basis for such a claim.

### C. Count II - False Imprisonment Claim.

Plaintiff asserts a claim for false imprisonment under section 1983 in Count II of the complaint. The Eighth Circuit has held that "false imprisonment is a state law tort claim. It is not coextensive with the Fourteenth Amendment, which protects only against deprivations of liberty accomplished without due process of law." King v. Beavers, 148 F.3d 1031, 1034 (8th Cir.), cert. denied, 525 U.S. 1002 (1998) (quoting Baker v. McCollan, 443 U.S. 137, 145 (1979)) (internal quotation marks omitted). Plaintiff's remaining section 1983 false imprisonment claim against Ebker in his individual capacity should therefore be dismissed.

### D. Count IV - State Law False Imprisonment Claim.

Plaintiff asserts a state law claim against Ebker for false imprisonment in Count IV of the complaint. Plaintiff asserts that Ebker "subjected [her] to unlawful false imprisonment by detaining plaintiff against her will without legal justification." Complaint, ¶ 60.

"The essence of the cause of action of . . . false imprisonment, is the confinement, without legal justification, by the wrongdoer of the person wronged." Rustici v. Weidemeyer, 673 S.W.2d 762, 767 (Mo. 1984) (en banc) (internal quotations and citations omitted). Under Missouri law, the elements required to prove false arrest and false imprisonment are identical. Id. The elements of false

imprisonment are the detention or restraint of the plaintiff against her will, and the unlawfulness of the detention or restraint. Jacobs v. Bonser, 46 S.W.3d 41, 48 (Mo. Ct. App. 2001).

Defendant Ebker moves for summary judgment on plaintiff's official-capacity false imprisonment claim on the basis of sovereign immunity. Ebker moves for summary judgment on plaintiff's individual-capacity false imprisonment claim on the basis of official immunity under state law. The Court will address these issues separately.

### 1. Official Capacity Claim.

Ebker moves for summary judgment on plaintiff's official-capacity false imprisonment claim on the basis of sovereign immunity, asserting that this claim is actually a claim against the County, which is entitled to sovereign immunity under Section 537.600.1, Mo. Rev. Stat. (2000).

Ebker asserts that under Missouri law, when a cause of action is asserted against a state official in his official capacity, the action is considered to be one against the state, citing Edwards v. McNeill, 894 S.W.2d 678, 682 (Mo. Ct. App. 1995). Ebker asserts that the County is entitled to sovereign immunity on plaintiff's tort claims and therefore he is also entitled to sovereign immunity with respect to official capacity claims against him, citing Edwards. In Edwards, the Missouri Court of Appeals stated that "the immunities available to the defendant in an official capacity action seeking damages are those the governmental entity enjoys," id. at 682, and concluded that a Missouri Department of Revenue computer programmer and electronic data processing coordinator sued in their official capacities were entitled to sovereign immunity on claims they were negligent in maintaining a motorist's driving record.

Plaintiff responds that public entities enjoy sovereign immunity only for negligent acts, while she is asserting the commission of intentional torts. Plaintiff does not cite any authority in support

of this position. Plaintiff also responds that Ebker cannot assert the sovereign immunity defense because it is "uniquely applicable to a governmental entity and is not applicable to an individual public official who acts as an agent of the state," quoting <u>Cottey v. Schmitter</u>, 24 S.W.3d 126, 128 (Mo. Ct. App. 2000), and citing <u>Rustici</u>, 673 S.W.2d at 768.

Plaintiff's assertion that sovereign immunity does not apply to intentional torts by public employees is unfounded. Numerous decisions have held that intentional torts are included in the protection of sovereign immunity. <u>See</u>, <u>e.g.</u>, <u>Credit Acceptance Corp. v. Smith</u>, 991 S.W.2d 720, 721 (Mo. Ct. App. 1999) (city entitled to sovereign immunity on conversion claim); <u>Mitchell v. Village of Edmundson</u>, 891 S.W.2d 848, 850 (Mo. Ct. App. 1995) (conversion claim; court stated, "Intentional torts have consistently been found to fall within the shield of sovereign immunity"); <u>Balderree v. Beeman</u>, 837 S.W.2d 309, 316 (Mo. Ct. App. 1992) (sovereign immunity applied in a suit for slander); <u>Conrod v. Missouri State Highway Patrol</u>, 810 S.W.2d 614, 617-18 (Mo. Ct. App. 1991) (conversion claim was precluded by sovereign immunity); <u>Duncan v. Creve Coeur Fire Protection Dist.</u>, 802 S.W.2d 205, 207 (Mo. Ct. App. 1991) (applying sovereign immunity to intentional infliction of emotional distress claim); <u>Carmelo v. Miller</u>, 569 S.W.2d 365, 367-68 (Mo. Ct. App. 1978) (sovereign immunity applied to a claim for assault and battery and false imprisonment by police officer); <u>see</u> <u>also</u> <u>Missouri Public Entity Risk Mgmt. Fund v. Investors Ins. Co. of America</u>, 338 F.Supp.2d 1046, 1051 (W.D. Mo. 2004) ("Under Missouri law, public entities enjoy sovereign immunity, even where the cause of action against the entity is pleaded as an intentional tort."); <u>McBride v. Clark</u>, No. 04-03307-CV-S-REL, __ F.Supp.2d __, 2006 WL 581139, *24 (W.D. Mo. Mar. 8, 2006) (battery claim by police officer; court stated that under Missouri law, "Intentional torts have consistently been found to fall within the shield of sovereign immunity;" quoting <u>Mitchell</u>, 891

S.W.2d at 850); <u>Harden v. St. Louis County</u>, No. 404-CV-602(CEJ), 2005 WL 1661505 (E.D. Mo. July 5, 2005) (same).

The Court turns to plaintiff's second assertion, that Ebker may not assert a sovereign immunity defense in his official capacity. The Court disagrees. Under Missouri law, "Sovereign immunity, if not waived, bars suits against employees in their official capacity, as such suits are essentially direct claims against the state." <u>Betts-Lucas v. Hartmann</u>, 87 S.W.3d 310, 327 (Mo. Ct. App. 2002) (citing <u>Edwards</u>, 894 S.W.2d at 682). <u>See</u>, <u>e.g.</u>, <u>Best v. Schoemehl</u>, 652 S.W.2d 740, 742 (Mo. Ct. App. 1983) (sovereign immunity barred claims against members of St. Louis Board of Police Commissioners in their official capacities); <u>R.C. v. Southwestern Bell Tel. Co.</u>, 759 S.W.2d 617, 619 (Mo. Ct. App. 1988) (same); <u>see also</u> <u>Grospitz v. Abbott</u>, No. 04-4072-CV-C-NKL, 2005 WL 2649707, *9 (W.D. Mo. Oct. 17, 2005) (dismissing claims against county and county commissioners sued in their official capacities based on sovereign immunity); <u>Gordon v. City of Kansas City, Mo.</u>, No. 98-0951-CV-W-4, 1999 WL 33453793, *5 n.3 (W.D. Mo. Nov. 2, 1999) (holding that tort claims asserted against City and individual defendants in their official capacity were barred by sovereign immunity under § 537.600), <u>aff'd</u>, 241 F.3d 997 (8th Cir. 2001); <u>Brenner v. School Dist. 47</u>, No. 86-1343 C(2), 1987 WL 18819, *4 (E.D. Mo. Jan. 12, 1987) (dismissing state law tort claims against School Board, Superintendent and Board members in their official capacities as barred by sovereign immunity). The <u>Cottey</u> and <u>Rustici</u> cases on which plaintiff relies do not address claims made against a public employee in his official capacity, but rather concern individual capacity claims, and therefore are distinguishable.

Ebker is correct that plaintiff's claim against him in his official capacity is properly construed as a claim against the County. <u>See</u> <u>Wirken v. Miller</u>, 978 S.W.2d 60, 62 (Mo. Ct. App. 1998) (suit

against public administrator of county in his official capacity was considered to be a suit against the county); Edwards, 894 S.W.2d at 682 ("When a cause of action is stated against a state official in his official capacity, the action is one against the state."). The Court must therefore determine if the County has sovereign immunity for plaintiff's false imprisonment claim.

Under Missouri law, sovereign immunity is waived only in cases involving injuries directly resulting from the negligent act of a public employee arising out of the operation of a motor vehicle within the course of the person's employment, or for injuries caused by the condition of a public entity's property. See Mo. Rev. Stat. § 537.600.1(1)-(2). Neither of these exceptions apply to plaintiff's claim for false imprisonment. In addition, as previously discussed, plaintiff has conceded that "sovereign immunity fully protects Defendant Gasconade County . . . ." Pl.'s Sugg. in Opp. at 4. Plaintiff's claim against Ebker in his official capacity for false imprisonment in Count IV should therefore be dismissed.

On its own motion, the Court holds that plaintiff's battery claim against Ebker in his official capacity in Count III must also be dismissed for the same reasons. Specifically, the battery claim against Ebker in his official capacity is properly construed as a claim against the County, which is entitled to sovereign immunity on the claim.[9]

---

[9]The Court recognizes that a sua sponte grant of summary judgment is appropriate only when the party against whom judgment will be entered is given sufficient advance notice and an adequate opportunity to respond, see Hobbs v. Lockhart, 46 F.3d 864, 868 (8th Cir. 1995), unless the losing party has failed to state a claim. See Enowmbitang v. Seagate Technology, Inc., 148 F.3d 970, 973 (8th Cir. 1998). In this case, plaintiff has had sufficient notice by virtue of defendants' motion for summary judgment on her state law false imprisonment claim against Ebker in his official capacity, to which she filed an opposition. Because Ebker is entitled to summary judgment on plaintiff's official-capacity battery claim for the exact same reasons presented by defendants' motion with respect to the false imprisonment claim, the Court finds there is no reason to delay entry of judgment in favor of defendant Ebker on the official-capacity battery claim.

### 2. Individual Capacity Claim.

Finally, defendant Ebker moves for summary judgment on plaintiff's false imprisonment claim against him in his individual capacity, on the basis of official immunity.

Under the doctrine of official immunity, public officials acting within the scope of their authority are not liable for injuries arising from their discretionary acts or omissions, but may be held liable for torts committed when acting in a ministerial capacity. Kanagawa v. State, 685 S.W.2d 831, 835 (Mo. 1985) (en banc).[10] Whether an act can be characterized as discretionary depends upon the degree of reason and judgment required to carry it out. A discretionary act requires "the exercise of reason in the adaption of means to an end and discretion in determining how or whether an act should be done or course pursued." Rustici, 673 S.W.2d at 769. The Court concludes that Ebker's acts in investigating a reported crimes and questioning a witness are discretionary functions. Cf. Blue v. Harrah's North Kansas City, LLC, 170 S.W.3d 466, 479 (Mo. Ct. App. 2005) (making arrest was discretionary function); Beaver v. Gosney, 825 S.W.2d 870, 874 (Mo. Ct. App. 1992) (investigating accident scene was discretionary function); DaVee v. Mathis, 812 S.W.2d 816, 827 (Mo. Ct. App. 1991) (execution of warrant was discretionary function).

Official immunity does not apply, however, to discretionary acts done in bad faith or with malice. See State ex rel. Twiehaus v. Adolf, 706 S.W.2d 443, 446 (Mo. 1986) (en banc); State ex rel. Boshers v. Dotson, 879 S.W.2d 730, 731 (Mo. Ct. App.1994). "The relevant definition of bad faith or malice in this context ordinarily contains a requirement of actual intent to cause injury." Twiehaus, 706 S.W.2d at 447. "A defendant acts with malice when he wantonly does that which a

---

[10]County officials are entitled to the protection of the official immunity doctrine. See State ex rel. Hill v. Baldridge, No. SC 86761, __ S.W.3d __, 2006 WL 696502, *1 (Mo. Mar. 21, 2006) (en banc).

man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another. An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others." Id. (internal punctuation and quoted case omitted). "Bad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." Id. (brackets and quoted case omitted). Id. An allegation of "malicious motive or purpose or of conscious wrongdoing" is sufficient under Missouri law to preclude application of the official immunity doctrine. See Twiehaus, 706 S.W.2d at 447.

In this case, plaintiff has alleged that defendant Ebker committed intentional torts--battery and false imprisonment--based on his actions as sheriff in conducting an investigation into plaintiff's report of stolen guns. Plaintiff alleges that Ebker physically restrained and beat her without any provocation while attempting to get her to say that a particular person, Phil, had taken the guns. These allegations encompass a conscious abuse of official duty and power which could certainly fall within the scope of malice or bad faith. Under these circumstances, whether official immunity applies is a question of fact which must be considered by the jury. See Blue, 170 S.W.3d at 479-80 (summary judgment inappropriate where facts created a genuine dispute about whether officer acted in bad faith or with malice in making arrest, thereby precluding him from claiming official immunity, and issue was for jury). Defendant Ebker's motion for summary judgment in his individual capacity on Count IV, plaintiff's claim for false imprisonment, should therefore be denied.

**Conclusion**.

For the foregoing reasons, defendants' motion for summary judgment will be granted in all respects as to defendant Gasconade County. With respect to defendant Ebker, the motion will be granted on the following claims: (1) Count I--section 1983 Fourth Amendment claims against Ebker in his official capacity for unlawful seizure, excessive force, unlawful arrest, and unlawful search; (2) Count II--section 1983 claims against Ebker in his individual and official capacities for false imprisonment; (3) Count IV--state law false imprisonment claim against Ebker in his official capacity; and (4) Count V--section 1983 failure to train claim against Ebker in his individual and official capacities.

The motion for summary judgment will be denied as to the following claims, which remain for trial: (1) the section 1983 claims against defendant Ebker in his individual capacity for unlawful seizure, excessive force, unlawful arrest and unlawful search in Count I; and (2) the state law false imprisonment claim against Ebker in his individual capacity in Count IV. Also remaining for trial is plaintiff's state law battery claim against Ebker in his individual capacity in Count III.

The Court will dismiss plaintiff's Fourteenth Amendment substantive due process claims in Count I under Graham v. Connor, 490 U.S. at 395, and Helseth v. Burch, 258 F.3d at 872, n.4. The Court will enter judgment in favor of defendant Ebker in his official capacity on plaintiff's state law battery claim in Count III.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment is **GRANTED in part** and **DENIED in part** as set forth above:

Said motion is **GRANTED** as to (1) all claims against defendant Gasconade County in Counts I through V; (2) the section 1983 Fourth Amendment claims against defendant Ebker in his official capacity for unlawful seizure, excessive force, unlawful arrest, and unlawful search in Count I; (3) the section 1983 claims against defendant Ebker in his individual and official capacities for false imprisonment in Count II; (4) the state law false imprisonment claim against defendant Ebker in his official capacity in Count IV; and (5) the section 1983 failure to train claims against defendant Ebker in his individual and official capacities in Count V.

Said motion is **DENIED** as to (1) the section 1983 claims against defendant Ebker in his individual capacity in Count I for unlawful seizure, excessive force, unlawful arrest and unlawful search; and (2) the state law claim against defendant Ebker in his individual capacity for false imprisonment in Count IV.

**IT IS FURTHER ORDERED** that plaintiff's Fourteenth Amendment substantive due process claims in Count I are **DISMISSED**.

**IT IS FURTHER ORDERED** that on the Court's own motion, judgment will be entered in favor of defendant Ebker in his official capacity on plaintiff's state law battery claim in Count III.

An appropriate partial judgment and order of dismissal shall accompany this memorandum and order.


**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**


Dated this   14th   day of April, 2006.